IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES COPPEDGE, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | NO. 23-2291 |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
|     Defendant. | : | |

### ORDER

**AND NOW**, this **7th** day of **August 2023**, upon consideration of Plaintiff James Coppedge's Motion seeking to file his Amended Complaint (ECF 10) and his Response to Order to File an Amended Complaint (ECF 12) it is **ORDERED** that Coppedge's Motion (ECF 10) is **DENIED** and the Clerk of Court shall not docket the proposed Amended Complaint filed at ECF 10-1.[1]

It is **FURTHER ORDERED** that because there is no operative pleading, and any further amendment would be futile, this case is **DISMISSED** pursuant to Federal Rule of Civil Procedure 41(b).[2] The Clerk of Court shall mark this case as **CLOSED**.

BY THE COURT:

_____
**Berle M. Schiller, J.**

---

[1] Coppedge cannot proceed on his proposed Amended Complaint (ECF 10-1) because his claims are legally baseless and patently frivolous. He wants to contest "Double Book Entries with the threat of Water Shutoffs," alleging Defendants are "ignoring former payments through US Treasury . . . in violation of HJR-192 of June 05, 1933, Public Law 73-10(48) Statues [sic] 112-113, 15 USC Section 1692e, seq., in consideration of the US Constitution Article 1, Section 10." (ECF 10 at 2.) He rhetorically asks the Court to "admit that the United States is currently still in BANKRUPTCY, under Article 1 Section 10, [because] Gold and Silver have been suspended, is that not true?" (ECF 12 at 5.) And in his response to the Court's July 6 Order, Coppedge contends that the Federal Government, in 1933, "discharge[d] all of our debts, public and private, dollar for dollar," in "one of the best kept secrets in this Bankrupt Nation . . . ." (*Id.* at 8 n.1.) Coppedge's submissions make clear that he adheres to the beliefs of, and grounds his claims in, the "Sovereign Citizen"

movement, whose members "employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings." *Gravatt v. United States*, 100 Fed. Cl. 279, 282 (2011); *see also* Jessica K. Phillips, *Not All Pro Se Litigants are Created Equally: Examining the Need for New Pro Se Litigant Classifications Through the Lens of the Sovereign Citizen Movement*, 29 Geo. J. Legal Ethics 1221, 1228 (2016) ("Through frivolous filings, false liens, and a variety of other tactics designed to take advantage of the leniency afforded to pro se litigants by the judicial system, Sovereign Citizen pro se litigants compound the already ballooning federal and state court backlogs." (internal footnote omitted)).

As the Court has already explained (*see* ECF 6), the Third Circuit has characterized claims like Coppedge's as being brought under a "Redemptionist" theory—"an indefensible tactic used by debtors attempting to avoid repayment of their debts . . . ." *Coppedge v. PNC Bank*, No. 18-2123, 2018 WL 10811876, at *1 n.1 (E.D. Pa. Nov. 21, 2018) (citing *Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3d Cir. 2008)). Such claims are "equal parts revisionist legal history and conspiracy theory." *Bryant v. Wash. Mut. Bank*, 524 F. Supp. 2d 753, 758, 759 n.9 (W.D. Va. 2007); *see also Roach v. Arrisi*, No. 15-2547, 2016 WL 8943290 at *2 (M.D. Fla. Jan. 7, 2016) (noting that sovereign citizen theories are "utterly frivolous," "patently ludicrous," and "a waste of . . . the court's time, which is being paid for by hard-earned tax dollars" and have been consistently rejected) (citation omitted); *Muhammad v. Smith*, No. 13-760, 2014 WL 3670609, at *2 (N.D.N.Y. July 23, 2014) ("Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as frivolous and a waste of court resources."); *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 214 (D. Conn. 2010) (collecting cases that "universally and emphatically" reject claims under the Redemptionist theory). "The delays caused by Sovereign Citizens hurt 'real' pro se litigants that need assistance from courts and judges to have a legitimate chance to win cases against represented parties." Phillips, *supra*, at 1228. This Court "and other federal courts are funded by the taxpayers of this country to adjudicate genuine disputes, not to function as playgrounds for would-be lawyers . . . ." *Scotto v. Credit Suisse*, No. 22-1176, 2022 WL 1320391, at *3 (E.D. Pa. May 3, 2022) (citation and internal quotation omitted). The Court will not entertain Coppedge's baseless claims.

²       Coppedge "must abide by the same rules that apply to all other litigants" even though he is representing himself. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). The Court already warned him that it would not grant him further leave to amend if he continued to file pleadings seeking relief under the Redemptionist theory and that his case might be dismissed for failure to prosecute if he did not file an appropriate Amended Complaint. (ECF 6.) Federal Rule of Civil Procedure 41(b) permits dismissal of a suit *sua sponte* for failure to prosecute or based on failure to comply with a court order. Fed. R. Civ. P. 41(b); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (holding that federal courts have the inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process"). When deciding whether dismissal is a proper sanction, courts typically balance six factors:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was

willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (emphasis omitted). No *Poulis* factor "is alone dispositive, and . . . not all of the factors need to be satisfied to justify dismissal of a complaint for lack of prosecution." *Hildebrand v. Allegheny Cnty.*, 923 F.3d 128, 131-32 (3d Cir. 2019). Balancing the *Poulis* factors is unnecessary when a litigant's conduct "makes adjudication of [the] case impossible." *Abulkhair v. New Century Fin. Servs., Inc.*, 467 F. App'x 151, 153 (3d Cir. 2012) (citing *Spain v. Gallegos*, 26 F.3d 439, 454-55 (3d Cir.1994)).

Coppedge's latest filings make it abundantly clear that he will not remedy his baseless Redemptionist-theory claims if granted further leave to amend. Moreover, this case continues his prior history of noncompliance with the Federal Rules of Civil Procedure. *See, e.g.*, *Coppedge v. US Bank Nat'l Ass'n,* No. 12-51, 2014 WL 3828384, at *4 (D. Del. July 30, 2014) (finding, *inter alia*, that Coppedge "had not properly served the Defendant," under Rule 4(m) and that he "did not make an effort to remedy the error"); *Coppedge v. Deutsche Bank Nat. Tr. Co.*, No. 12-3268, 2013 WL 1827584, at *3 (E.D. Pa. May 1, 2013) (denying leave to amend because Coppedge's "pleadings d[id] not include any allegations suggesting that Coppedge could conceivably establish subject matter jurisdiction or a claim upon which relief could be granted"); *Coppedge v. Litzkow,* No. 09-787, 2010 WL 11711837, at *3 (D. Del. June 17, 2010) ("Given his dismissive attitude towards court rules and orders in the past, the court finds it unlikely that further warnings will deter him in the future."). Dismissal of an action "is a drastic sanction," but it is appropriate here. *Poulis*, 747 F.2d at 866. To hold otherwise would undermine the purpose of the Federal Rules of Civil Procedure: "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.